UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

CARLOS AMADOR, his wife IRMITA  *
GUZMAN and their Conjugal Partnership  *
                                       *
        Plaintiffs                     *
                                       *
        v.                             *   Civ. No. 98-1190 (PG)
                                       *
PUERTO RICO SUN OIL COMPANY            *
                                       *
        Defendants                     *
                                       *
* * * * * * * * * * * * *

**OPINION & ORDER**

On December 11, 1997, Carlos Amador and his wife, Irmita Guzman, and their marital partnership ("plaintiffs") commenced an action in the Court of First Instance, Humacao Part, Commonwealth of Puerto Rico, Civil No. HAC 97-0277. (Dkt. 1, exh. F) Puerto Rico Sun Oil Company ("defendant" or "Sun Oil") removed the case to this court on February 24, 1998. (Dkt. 1) Defendant subsequently filed a Motion for Summary Judgment. (Dkt. 6) Plaintiff filed a Motion in Opposition to Defendant's Motion for Summary Judgment. (Dkt. 8) After being given leave by the Court, defendant filed it's Reply to plaintiff's opposition. (Dkt. 12)

I. FACTS

Carlos Amador worked for Sun Oil for twenty-five years, until he resigned by letter on April 11, 1997. In late 1996, Sun Oil announced its intention to reduce its workforce. To accomplish this reduction, Sun Oil offered it employees, including Amador, an Involuntary Termination Plan ("IT




AO 72A
(Rev.8/82)

Civ. No. 98-1190 (PG)                                                                                              2.

Plan") that provided certain benefits, like enhanced severance benefits. Sun Oil offered the IT Plan only to employees holding positions to be eliminated in the restructuring of Sun Oil.

Around the beginning of December, employees received a letter setting forth Sun Oil's intention of restructuring and offering employees the opportunity to state their preference as to whether they would like to terminate their employment with Sun Oil by accepting the terms of the IT Plan. Sun Oil reserved the right in the letter, "at the sole discretion of management" (Dkt. 6, exh. C), to make the final decision on whether or not to grant the preference. Both parties agree that only employees whose employment was terminated due to the restructuring were eligible for the options under the IT Plan.

The letter set a deadline of December 20, 1996 for employees to state their preference. Amador received the letter, but chose not to respond because he was not planning on leaving Sun Oil at that time.

Sometime in the early months of 1997, Amador received a job offer from PCI Triline. It was at this time that Amador began informal talks about receiving pension funds with José Morales, Amador's superior at Sun Oil. Amador asked Morales for a package similar (if not the same) to what Sun Oil offered under the IT Plan. Morales spoke to James Johnson, Sun Oil's Human Resources Manager, and Sun Oil's lawyers in Philadelphia about the possibility of Amador receiving this package. Morales informed Amador that Sun Oil agreed to accommodate Amador's wish. After receiving word that Sun Oil would give him the money he requested, Amador accepted the job with PCI Triline.

Some time later Morales left a voice mail message informing Amador, sometime prior to Amador's April 11, 1997 resignation, that Sun Oil in fact could not accommodate him. Amador did not

Civ. No. 98-1190 (PG)             3.

receive any money from Sun Oil. Amador's position was not eliminated; he could have remained employed by Sun Oil.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Messnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992). In essence, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). *See also Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986). Therefore, the trial court must go beyond the façade of the pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied*, 507 U.S. 1030 (1993). Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). *See also Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir. 1999), *cert. denied* 1999 WL 296774 (Oct. 4, 1999); *Maldonado-Denis v. Castillo-Rodríguez*, 23 F. 3d 576, 581 (1st Cir. 1994).

In order to prevail on a motion for summary judgment, the moving party first must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. *See Cadle Co. v Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). Once the moving party has properly

AO 72A
(Rev.8/82)

Civ. No. 98-1190 (PG) 4.

supported it's motion, "the burden shifts to the nonmovant to demonstrate, through specific facts, that a trialworthy issue remains." *Id. See also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 14 (1st Cir. 1996).

III. PREEMPTION AND THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

The Employee Retirement Income Security Act, ("ERISA") contains "deliberately expansive" language and its' preemption clause is conspicuous for its breadth. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990). *See id. See also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). ERISA "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C.A. § 1144 (a). A state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8 (1987). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co.*, 498 U.S. at 139 (quoting *Pilot Life Ins. Co.*, 481 U.S. at 47). In this case, a crucial question is whether plaintiffs' state law claims "relate to" a benefit plan.

A.   Do Plaintiffs' State Law Claims "Relate to" a Benefits Plan?

In *Ingersoll-Rand Co.*, the Supreme Court identified two tests for determining whether a cause of action "relates to" a benefits plan and is thus preempted by ERISA. *See Ingersoll Rand Co.*, 498 U.S. at 140-42; *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994). The first test expressly preempts a law where "a plaintiff, in order to prevail, must plead, and the court must find, that an

ERISA plan exists." *Vartanian v. Monsanto Co.*, 14 F.3d at 700 (citing *Ingersoll-Rand Co.*, 498 U.S. at 140). In other words, when the court's inquiry must be directed to the plan, the cause of action "relates to" an ERISA plan. *Id.* The second test finds preemption when a cause of action directly conflicts with an ERISA cause of action. *Id.* (citing *Ingersoll-Rand Co.*, 498 U.S. at 142).

Plaintiffs' claims survive under *Ingersoll-Rand*'s first test, as they do not "relate to" an ERISA plan. Plaintiffs' breach of contract and tort claims do not require the pleading, proving and finding of an ERISA benefits plan. There is still a cause of action if there is no plan. *See Vartanian v. Monsanto Co.*, 14 F.3d at 700; *Ingersoll-Rand Co.*, 498 U.S at 140.

Plaintiffs' claims also survive under *Ingersoll-Rand*'s second test. The Court is at loss to see how Plaintiffs' claims conflict with defendant's IT Plan. Both sides agree that Amador did not qualify for the plan, nor was he offered participation in the plan. Defendant's cite to *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 793 (1st Cir. 1995), for support. Their reliance is misdirected. *Carlo* stands for the proposition that a suit based on misrepresentation regarding the scope or existence of benefits is preempted. *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d at 793. That is not the case here. Plaintiffs have alleged a breach of contract, separate and apart from Sun Oil's IT Plan.[1]

In *De Buono v. NYSA-ILA Medical & Clinical Services Fund*, 520 U.S. 806, 814-15 (1997), the Supreme Court held that the law in question was "one of [a] 'myriad [of] state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not

---

[1] Likewise, if Plaintiffs' claim was for extra-contractual damages arising out of defendant's denial of benefits, ERISA would preempt Plaintiffs' claim. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987); *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir. 1990), *cert. denied*, 498 U.S. 1013 (1990) ("Under this section, a claimant's common law contract and torts claims asserting the improper processing of a claim for benefits under an ERISA regulated insurance policy are pre-empted"); *Cintron Parilla v. Lilly del Caribe, Inc.*, 32 F. Supp. 2d 35, 37 (D.P.R. 1998).

"relate to" them within the meaning of the governing statute." The Court in *De Buono* also wrote, "[n]or is it a case in which the existence of a pension plan is a critical element of a state law cause of action." *Cf. Ingersoll-Rand Co.*, 498 U.S. at 139-40 ("We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan.... Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension plan itself").

This is not to say that Plaintiffs will prevail on their state laws claims; this is for a state court to decide. However, ERISA does not preempt their efforts.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment. Furthermore, because ERISA does not preempt Plaintiffs' state law claims, of which the Court has no subject matter jurisdiction, the Plaintiffs' case is REMANDED to the Court of First Instance, Humacao Part, Commonwealth of Puerto Rico, pursuant to 28 U.S.C. § 1447 (c).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 15, 1999.

JUAN M. PEREZ-GIMENEZ
U. S. District Judge